WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael J. Wehrli, | No. CV-12-1309-PHX-DKD |
| Plaintiff, | |
| vs. | **ORDER** |
| Tempe Union High School District, et al., | |
| Defendants. | |

Pending before the Court is Defendant Tempe Union High School District's (TUSD) Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 on Plaintiff Michael J. Wehrli's age discrimination claim (Doc. 45). Wehrli claims that TUSD discriminated against him on the basis of age in violation of Title VII, the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1). The parties have agreed to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). The Court concludes that Wehrli has failed to establish a *prima facie* case of discrimination under the *McDonnell Douglas* standard, and therefore grants Defendant's Motion for Summary Judgment.

**I.     BACKGROUND**

Wehrli was born on July 13, 1942 (Doc. 46, DSOF ¶ 1). He was hired by TUSD in 1977 to teach high school English at Corona del Sol High School (*Id.*, ¶ 2). In early 2009, when Wehrli was age 66, he received an unfavorable performance evaluation which led to his placement on a performance growth plan (*Id.*, Exh 2:B-C). Wehrli alleged that the evaluation was based on age discrimination and pursued TUSD's grievance process (*Id.*, Exh 3:B). After

the Governing Board decided not to hear Wehrli's grievance, Wehrli requested to be released from his contract for the 2009-2010 school year and elected to retire (*Id.*, Exh 3, ¶¶ 14, 17; Exh L).

### A. The Short Form Evaluation

The Arizona Department of Education has specific curriculum requirements, and TUSD has developed curriculum maps to ensure that its courses meet these requirements (DSOF, Exh 2, ¶ 6). All teachers are required to follow the curriculum maps, and evaluators use these maps in their determinations of teacher competency (*Id.*, ¶¶ 6-7). The first step of the evaluation process is the short form evaluation, which includes a 20-minute observation and a post-conference (*Id.*, Exh 2:A at 6). If the short form evaluation indicates that the teacher meets expectations, then the process is complete (*Id.*, Exh 2, ¶ 4). If not, then the process proceeds to the long form evaluation, which includes an observation of an entire classroom period, a post-conference, and a professional growth plan (*Id.*, Exh 2:A at 5).

On January 9, 2009, Susan Edwards, principal of Corona del Sol High School, performed Wehrli's short form evaluation (*Id.*, Exh 2, ¶¶ 2, 7). The evaluation indicated deficiencies in planning instruction to meet objectives; utilizing effective instructional strategies; presenting subject matter in a clear, logical way; providing a positive learning environment; and complying with Arizona statutes and District policies (*Id.*). On February 6, 2009, Edwards discussed Wehrli's performance with him (*Id.*, ¶ 8).

Wehrli's previous evaluators had made similar indications about his performance, though the evaluations were not as severe and did not result in placement on a professional growth plan (*Id.*, Exh 3:E). Throughout his decades of teaching, previous evaluators recommended less lecturing, more graded assignments and written feedback, better organization and preparation, following the department curriculum guidelines, refraining from using inappropriate language, and discontinuing use of handwritten handouts (*Id.*).

B.     The Long Form Evaluation

The 2009 short form evaluation led to the long form evaluation, which showed deficiencies in utilizing effective instructional strategies; presenting subject matter in a clear, precise, logical and coherent way; and planning instruction to meet objectives (DSOF, Exh 2, ¶ 8). Edwards prepared a professional growth plan, and on February 18, 2009, she discussed it with Wehrli (*Id.*, ¶¶ 9-10). The professional growth plan included requirements that Wehrli begin to use organized lesson plans, post grades online, use acceptable and clear communication with students, and increase student interaction (*Id.*, Exh 2:C).

In accordance with TUSD policy, the unfavorable evaluation also put Wehrli on Preliminary Notice of Inadequate Classroom Performance, informing him that he had 85 instructional days to remedy his deficiencies (Exh 2, ¶¶ 11-12; Exh 2:D). Wehrli returned a written response to the evaluation to TUSD (Exh 2, ¶ 10). In the written response, Wehrli stated that the evaluation discriminated against him because of his age. In support of this allegation, he noted that practices he used when he began teaching thirty years ago, such as handwritten handouts and certain research paper assignments, are now unacceptable (Exh 3:C). Wehrli's four-page "Teacher Response" included the statements, "Are you kidding me?", "Get Real!", and his descriptions of the professional growth plan as "moronic" and "pathetic" (Exh 3:C). Though Wehrli's response denied the need for improvement, he acknowledged in his deposition that he had not been doing many of the duties that Edwards detailed in the professional growth plan (Exh 1:21-23, 42-47). He also started to comply with the performance improvement plan following his post-conference with Edwards, (*Id.*, 42:18-47:11). Wehrli was offered and accepted a contract to continue teaching at Corona del Sol for the following year (DSOF, ¶ 31).

C.     The Grievance Process

On April 21, 2009, in addition to his written response, Wehrli also submitted a formal grievance (DSOF, Exh 2, ¶ 13). In the grievance, Wehrli alleged that the performance evaluation was based on age discrimination because he had never before received three "Improvement Required" designations and that the evaluation was intended to create a hostile

work environment (*Id.*, Exh 3:C). TUSD alleges that a grievance was not the proper avenue for an age discrimination claim (*Id.*, Exh 3, ¶ 8). TUSD Policy GBA states that TUSD prohibits discrimination based on age and other protected categories, but policy GBA-R procedures only cover gender, race, color, religion, national origin, or disability; age is not included (*Id.*, Exh 3:D).

The first step of the grievance procedure is presented to the first level administrator or supervisor, who in this case was Edwards (*Id.*, Exh 3:B). On May 1, Edwards responded to Wehrli's grievance, finding that it was without merit, but she did not directly address the issue of age discrimination (*Id.*, Exh 3:F). Edwards' response was not returned until after the TUSD deadline (*Id.*, Exh 3:H). Wehrli pursued the grievance to the second step, which went to Steve Adolph, TUSD Superintendent (*Id.*). On May 27, Adolph responded and did directly address Wehrli's accusation of age discrimination, but still found that his grievance was without merit (*Id.*). Wehrli then pursued the grievance to the final step with the Governing Board (*Id.*, Exh 3:I). The Governing Board scheduled a time to address Wehrli's grievance on their June 17, 2009 agenda (*Id.*, Exh 3:J). However, at the meeting, Wehrli was told that the board would not address his grievance because Edwards had persuaded them that it might interfere with their ability to address his performance in the future if necessary (*Id.*, Exh 3, ¶ 14).

When Wehrli first filed his grievance, Janet Seegren, the Assistant Superintendent of Human Resources for TUSD, conducted an investigation (*Id.*, ¶ 7). She found that Edwards had properly followed the evaluation process, that eight teachers had received preliminary notices of inadequacy of classroom performance and four were under the age of 40, and that no age discrimination had occurred (*Id.*, ¶¶ 9-11). The day after the Governing Board refused to see Wehrli, Seegren sent him a letter informing him that she would be serving as the Compliance Officer and requested an interview (*Id.*, ¶ 15). Wehrli did not respond (*Id.*).

On June 22, 2009, Wehrli submitted a letter to the Governing Board requesting a release from his contract so that he could retire, which was approved (*Id.*, Exh 3:L).

**II.     SUMMARY JUDGMENT**

    A.     Legal Standard

TUSD contends that Wehrli has failed to establish a *prima facie* case of discrimination by either direct or circumstantial evidence. For TUSD to prevail on its Motion for Summary Judgment, it must show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A material fact is one "that might affect the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The court must draw all reasonable inferences in favor of the non-moving party. *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996).

Wehrli's complaint arises under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. A plaintiff can demonstrate impermissible discrimination by presenting direct evidence of discrimination or by presenting circumstantial evidence which satisfies the burden-shifting test set forth in *McDonnell Douglas v. Green,* 411 U.S. 792 (1973). Plaintiff appears to concede that there is no direct evidence of discrimination by his argument in his Response that he has satisfied the test set forth in *McDonnell Douglas*.[1] Under *McDonnell Douglas*, Wehrli must first establish a *prima facie* case of discrimination. *Id.* at 802. In particular, he must show that (1) he belongs to a protected class, (2) he suffered an adverse employment action, (3) he was performing his job satisfactorily, and (4) he was either replaced by a substantially younger employee with equal or inferior qualifications or he was discharged under circumstances otherwise "giving rise to an inference of age discrimination." *Diaz v.*

---

[1] The Court sustains Defendant's Foundation Objections (Doc. 54 at ¶ 49) to Plaintiff's Affidavit of Carol Payant with respect to ¶¶ 14,16 of her Affidavit. No foundation exists given that the declarant "retired [from the school district] in 2001and taught 2/5 time another five years." Affidavit of Carol Payant , ¶2 (Doc. 51-1). Her foundation for any personal knowledge thus concluded in 2006 and Plaintiff alleges that he "was subjected in 2009 to age discrimination." Affidavit of Michael J. Wehrli, ¶ 1 (Doc. 52-1).

- 5 -

*Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1207 (9th Cir. 2008) (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000)).

If Wehrli succeeds in establishing a *prima facie* case, the burden of production shifts to TUSD to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Aragon v. Republic Silver State Disposal*, 292 F.3d 654, 658 (9th Cir. 2002) (quoting *McDonnell Douglas*, 411 U.S. at 802 (1973)). If TUSD states a legitimate, nondiscriminatory reason, Wehrli must demonstrate that TUSD's articulated reason is a pretext for unlawful discrimination by "either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Aragon*, 292 F.3d at 658-59 (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000)). However, Wehrli's evidence must be both specific and substantial to overcome the legitimate reasons put forth by TUSD. *Id.* at 659. If Wehrli demonstrates pretext, "then the burden-shifting framework disappears, and the only remaining issue is 'discrimination vel non.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000)).

### 1. <u>Wehrli Belonged to a Protected Class</u>.

The ADEA protects individuals who are at least 40 years of age. 29 U.S.C. § 631. Wehrli was born on July 13, 1942 (DSOF, ¶ 1). The alleged adverse employment action took place in the spring and early summer of 2009, at which time Wehrli was 66 years old (*Id.*, ¶¶ 9-30). Therefore, Wehrli is a member of a protected class.

### 2. <u>Whether Wehrli Suffered an Adverse Employment Action</u>.

Defendant's Motion for Summary Judgment contends that Plaintiff fails to establish a *prima facie* case given that he did not experience an adverse employment action. Plaintiff counters that the negative evaluation and performance plan were adverse employment actions. Defendant argues that the Ninth Circuit has not determined that such actions constitute an adverse employment action. The Supreme Court has defined an adverse employment action as "a significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant

change in benefits." *Burlington Industries v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 2268 (1998). Plaintiff alleged no such adverse actions here. However, the Ninth Circuit has "define[d] 'adverse employment action' broadly." *Fonseca v. Sysco Food Services of Arizona, Inc.,* 374 F.3d 840, 847 (9th Cir. 2004). The Circuit has further stated that "undeserved performance ratings" can constitute adverse employment action. However, the cases applying this proposition concern *retaliation* claims which connote a different meaning[2] than the meaning in the *prima facie* analysis applied here in a case alleging age discrimination. *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987); *Brooks v. City of San Mateo*, 229 F.3d 917, 928-29 (9th Cir. 2000). *But see Kortan v. California Youth Authority*, 217 F.3d 1104, 1112-13 (9th Cir. 2000) and *Lyons v. England*, 307 F.3d 1092, 1118 (9th Cir. 2002) where mediocre employment evaluations in the absence of additional tangible change in conditions of employment did not constitute adverse employment action.

While the Ninth Circuit has not specifically addressed whether a performance plan can constitute an adverse employment action, other circuits have concluded that such plans are not sufficient to satisfy a plaintiff's *prima facie* burden. *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1224 (7th Cir. 2006) ("Most courts that have considered whether a [performance improvement plan], standing alone, is an adverse employment action have found it is not.") (*citing Givens v. Cingular Wireless*, 396 F.3d 998 (8th Cir. 2005), *Taylor v. Small*, 350 F.3d 1286,1293 (D.C. Cir. 2003), and *Agnew v. BASF Corp.*, 286 F.3d 307, 310 (6th Cir. 2002)). The Court finds the other circuits' holdings to be consistent with the Supreme Court's definition of an adverse employment action. Plaintiff's performance plan did not result in an adverse employment action "such as hiring, firing, failing to promote, reassignment with significantly

---

[2] The *prima facie* elements of a retaliation claim are: 1) the employee's involvement in a protected activity; 2) an adverse employment action; and 3) a casual link between the two. *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir. 2002). In the retaliation context, an adverse employment action is "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000).

- 7 -

1 different responsibilities, or a decision causing a significant change in benefits." *Burlington Industries*, 524 U.S. at 761, 118 S.Ct. at 2268. Indeed, Plaintiff was offered a renewal of his employment contract for the following year notwithstanding the existence of his performance plan.

Wehrli contends that he was constructively terminated by the failure of the Governing Board to consider his grievance. Wehrli states in his Response that "[w]hile plaintiff was offered a new contract for the coming year, to not have his administrative claim reviewed which would have had the effect of setting aside the adverse evaluation regardless of the reasons why, and leave him working under the disability of an unresolved adverse evaluation would be professionally oppressive." Response at pp. 7-9 (Doc. 51).

According to the Ninth Circuit:

> 'constructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer . . . .' We set the bar high for a claim of constructive discharge because federal antidiscrimination policies are better served when the employee and employer attack discrimination within their existing employment relationship, rather than when the employee walks away and then later litigates whether his employment situation was tolerable.

*Poland v. Chertoff*, 494 F.3d 1174 (9th Cir. 2007) (*quoting Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000)) (*citing Thorne v. City of El Segundo*, 802 F.2d 1131, 1134 (9th Cir. 1986); *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir. 1996) ("An employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged.").

Here, Wehrli contends that he did attempt to work out the problem with TUSD. He started to comply with the performance improvement plan following his post-conference with Edwards, (DSOF, Exh 1, 42:18-47:11); he prepared a written response to his evaluation, in accordance with TUSD policy, (*Id.*, Exh 2, ¶ 10); and he submitted a grievance and attempted to see it through to its final stage, where he would have addressed the Governing Board (*Id.*, ¶

13; Exh 3, ¶¶ 12, 14; Exh G; Exh I). However, Wehrli contends he was prevented from completing the final stage when Edwards persuaded the Governing Board not to address his grievance (*Id.*, Exh 3, ¶ 14; Exh J). TUSD argues that it would have been improper for the Governing Board to address the grievance and that Wehrli did not properly report his claim of age discrimination. Regardless of whether Wehrli was prevented from presenting his grievance to the Governing Board, it cannot be said that he has met the Ninth Circuit standard for a constructive discharge, just as it cannot be said that he suffered an adverse employment action, given that his contract was renewed with no change in pay or benefits, job responsibilities or status. The ADEA does not create liability for employers who identify areas for improvement and put in place a mechanism to accomplish this task. Whether Plaintiff thought the criticisms and plan were "moronic" or "pathetic," Plaintiff was directed to pursue this plan and he suffered no adverse employment action pursuant to the plan nor a constructive discharge when he requested that he be released from his contract.

The absence of any single element of the required *prima facie* case is sufficient grounds to grant Defendant's Motion for Summary Judgment and thus the Court need not address the other elements of a *prima facie* case.

Because Wehrli has not established a *prima facie* case of age discrimination, steps two and three of the *McDonnell Douglas* standard also need not be addressed.

**IT IS ORDERED GRANTING** Defendant Tempe Union High School District's Motion for Summary Judgment (Doc. 45). The Clerk is directed to enter Judgment in favor of Defendants.

DATED this 24th day of March, 2014.

_____
David K. Duncan
United States Magistrate Judge